```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x
UNITED STATES OF AMERICA,

      -against-                          MEMORANDUM AND ORDER
                                         Case No. 12-CR-326 (FB)
BENJAMIN J. TURNER,

            Defendant.
---------------------------------------------------x
```

**BLOCK, Senior District Judge:**

Benjamin Turner was convicted of conspiracy to commit wire fraud, bank fraud, and aggravated identity theft. Those convictions were affirmed on appeal. *See United States v. Turner*, 629 F. App'x 66 (2d Cir. Oct. 26, 2015). Turner now moves to vacate his convictions and sentence pursuant to 28 U.S.C. § 2255. For the following reasons, the motion is denied.

**I**

Turner's convictions stem from a scheme to purchase property at 1678 Madison Place in Brooklyn. In 2006 Turner obtained a power of attorney from Dana Marano without her knowledge. Using the power of attorney, Turner purchased the property in Marano's name for $530,000. He then drew up a loan agreement falsely documenting that Marano had borrowed the purchase money from Four Dolphins Corporation, a shell corporation he controlled.

A year later, Turner arranged for an artificially inflated appraisal of the

1

property, which he used to sell the property to Leana Shevchuk, a straw buyer. This time he simply forged Marano's signature on a power of attorney authorizing the sale for $800,000. Wells Fargo funded approximately $538,000 of the purchase price, while a second bank financed the difference. $633,000 was paid to the Turner's shell corporation for Marano's non-existent loan. In addition, Turner forged a check from Shevchuk to Marano to make it appear that Shevchuk was a legitimate buyer; in fact, her mortgage application contained false statements regarding her income and the intended use of the property.

## II

Turner raises four arguments in support of his § 2255 motion. The Court addresses them in turn.

**A.   Loss Calculation**

First, Turner argues that the Court improperly calculated the amount of loss for purposes of both its Guidelines calculation and its restitution order. He concedes that loss is not an element of the offenses of which he was convicted. *See United States v. Barrett*, 178 F.3d 643, 648 (2d Cir. 1999).

Challenges to restitution orders are not cognizable under § 2255, which addresses only custodial punishments. *See Kaminski v. United States*, 339 F.3d 84, 87 (2d Cir. 2003). To the extent that Turner challenges the Court's Guidelines calculation, any error would be harmless because the Court quite clearly expressed

its reservations about the dollar-driven nature of the loss calculation guideline and sentenced Turner to less than half of the applicable Guidelines range. *See Kassir v. United States*, 3 F.4th 556, 564 (2d Cir. 2021) ("Without prejudicial error, there is no basis for collateral relief.").

In any event, the Court's calculations were correct. Its restitution calculation of $239,000—representing the actual loss to Wells Fargo—was taken directly from the trial testimony of the bank's financial crimes consultant. Its Guidelines calculation that Turner was responsible for an additional $5.5 million attributable to other related instances of mortgage fraud was based on the parties' negotiated stipulation. *Cf. Colon v. United States*, 2005 WL 2088412, at *3 (S.D.N.Y. Aug. 29, 2005) (deeming claim of ineffective assistance "frivolous" where the defendant "stipulated to the very loss amount figures and offense level increase to which he claims counsel should have objected").

**B.** *Brady*

Turner next claims that the government violated its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963). "In order to establish a *Brady* violation, a defendant must show, *inter alia,* (1) that the government failed to disclose favorable evidence, and (2) that the evidence it 'suppressed' was material." *United States v. Payne*, 63 F.3d 1200, 1208 (2d Cir. 1995). Turner argues that the government failed to disclose four categories of evidence.

3

First, he argues that the government failed to disclose details of an investigation into the underwriting practices of Wells Fargo by the United States Attorney's Office for the Southern District of New York.  There is, however, no evidence that the *Eastern District* office prosecuting Turner's case possessed any evidence regarding the investigation.  "[T]he imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require us to adopt a monolithic view of government that would condemn the prosecution of criminal cases to a state of paralysis."  *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (internal quotation marks omitted).  Moreover, any such evidence would have been immaterial in light of the Court's ruling *in limine* precluding Turner from pursuing a "blame the bank" defense.

Second, Turner claims that the government failed to disclose a "ruling" from the state-court foreclosure proceeding that Shevchuk purchased 1678 Madison Place as an investment.  As with the Wells Fargo investigation, Turner has failed to show that the government was aware of the ruling or that he would have been allowed to shift the blame for his scheme onto others.  In addition, the materiality of the statement is dubious because Shevchuk acknowledged in her trial testimony that she did not intend to live at the property, that she knew that her statement (and others) on the mortgage application were false, and that she made the statements at the

4

direction of Turner's co-defendant, Jacob Vizel. It is entirely speculative that her statement in the foreclosure proceeding would have bolstered Turner's defense in any way.

Third, Turner argues that the government failed to disclose the contents of its interviews with Nazeema Alim, an employee of Turner's law firm. Alim was under investigation for her involvement with matter at the firm having nothing to do with 1678 Madison Place and, thus, did not testify at Turner's trial. Despite knowing about the interviews from Alim herself, Turner has not identified any statements Alim made that might have exculpated him.

Finally, Turner argues that the government failed to disclose evidence regarding the "credibility" of Assistant United States Attorney Michael Canty. He refers specifically to a malicious prosecution lawsuit against Canty when he was an assistant district attorney. The lawsuit was a matter of public record long before Turner's trial and was later dismissed on summary judgment. In addition, the lawsuit was not material to Turner's defense; the Court would never have allowed a trial concerning Turner's fraudulent scheme to devolve into a sideshow attacking the prosecution for alleged misconduct completely unrelated to the case.

**C.   Prior Acts**

Turner next argues that the Court should not have considered other, uncharged instances of mortgage fraud in its sentencing because they fell outside the statute of

5

limitations. For purposes of sentencing, relevant conduct includes uncharged conduct. *See United States v. Cousineau*, 929 F.2d 64, 67 (2d Cir. 1991). This is true even if the uncharged conduct falls outside the relevant statute of limitations. *See United States v. Silkowski*, 32 F.3d 682, 688 (2d Cir. 1994) ("[W]e have rejected the placing of any inherent temporal limitation on the transactions to be considered but noted only that any amounts considered must have been part of the same course of conduct as the counts leading to conviction." (internal quotations marks omitted)). As the Court found, the other instances of mortgage fraud were clearly part of a single scheme and were, therefore, properly considered.

### D.   Ineffective Assistance

Finally, Turner argues that his counsel was ineffective. In the main, he frames the issue as a failure to exploit claimed errors in the government's loss calculation. As Turner puts it, "Counsel at both the trial and Appellate level did not understand mortgages and/or the basic facts of the case." Mot. at 16.

As discussed in Part A, there was no error in the loss calculation. Counsel was obviously not ineffective for failing to raise issues without merit. *See Aparicio v. Artuz*, 269 F.3d 78, 96 (2d Cir. 2001) ("The failure to include a meritless argument does not fall outside the wide range of professionally competent assistance to which Petitioner was entitled." (internal quotation marks omitted)).

6

## III

For the foregoing reasons, Turners motion is denied.  Since he has failed to show a substantial violation of a federal right, a certificate of appealability will not issue.  *See* 28 U.S.C. § 2253.

**SO ORDERED.**

                                                  _/S/ Frederic Block_____
                                                  FREDERIC BLOCK
                                                  Senior United States District Judge

Brooklyn, New York
November 10, 2021